IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES WALTER MATT, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CLARENCE PRESSLEY and | : | |
| KEYSTONE CENTER EXTENDED CARE | : | NO. 04-6110 |

ORDER AND OPINION

JACOB P.  HART                                        DATE:   May 3, 2006
UNITED STATES MAGISTRATE JUDGE

I.       Introduction

James Walter Matt, Jr., was assaulted on the premises of Keystone Center Extended Care,

("Keystone"), a drug detoxification facility, by Clarence Pressley, a former counselor at the

center who had just been discharged because of a complaint by Matt about his conduct.  In this

action, Matt has asserted claims against both defendants for negligence, assault, battery,

intentional infliction of emotional distress, and negligent infliction of emotional distress.

In every count, Matt has asserted that Keystone "is liable under the doctrine of respondeat

superior."  Complaint at ¶ ¶ 40, 45, 49, 56 and 64.  In his first count, Matt also asserts that

Keystone was negligent in, among other things, hiring, training, supervising and terminating

Pressley, and that it failed to provide a secure environment for its patients.  Id. at ¶ 36.

Pressley did not file an answer to Matt's complaint, and a default judgment was entered

against him on January 24, 2006.  Keystone, however, has answered the complaint, and now

seeks summary judgment.  For the reasons set forth below, its motion will be granted in part and

denied in part.

II.    <u>Factual and Procedural Background</u>

It is undisputed that in October, 2004, Matt was a patient at Keystone, and Pressley was a residential counselor.  On October 10, 2004, Pressley and Matt became involved in an argument. Matt conceded that he, as well as Pressley, was "slinging words back and forth."  Matt Deposition Excerpt, attached as Exhibit E to Matt's Response, at p. 44.  He claims, however, that Pressley cursed at him and called him a "rich white kid."  <u>Id</u> at 54, 55.  Then:

> I didn't like what he ... had to say, so I said to him, I don't think that's right.  Who the F you think you're talking to I said back to him.  And that's when he started freaking out on me, cursing at me and then he started shoving me and then he took off his jacket and clenched ... his fist and bit his bottom lip and threatened to knock the rest of my teeth down my throat.

<u>Id</u>. at 55-56.

According to Matt, he called out to some kitchen staff who witnessed this incident but they refused to become involved.  <u>Id</u>. at 57.  Nevertheless, when Pressley realized he was being observed, he patted Matt on the back, and said "'it's tough love, it's tough love,' because he was like trying to play it off because I brought somebody else's attention to what he was doing."  <u>Id</u>. at 58.

Karen Gale, a counselor aide at Keystone, saw some of the interaction between Matt and Pressley, and "heard Mr. Pressley speaking loudly and profane language."  Gale Deposition Excerpt, attached to Response as Exhibit G, at 11.  Minutes later, Matt approached her and complained of Pressley's behavior.  <u>Id</u>. at 15-16.  Gale advised Matt to use the formal grievance procedure, and to turn to his case manager or the patient advocate.  <u>Id</u>. at 16-17.  Gale also reported the incident to her head of staff, Sharon Braziar.  <u>Id</u>. at 19.

2

Matt then asked Marita Getka, a nurse employed by Keystone, to help him write a statement. Getka Deposition Excerpt, attached to Response as Exhibit H, at pp. 11-12; Matt/Getka statement, attached to Response as Exhibit F. The facts recorded in the statement are essentially the same as those to which Matt testified at his deposition. Exhibit F. The next day, October 11, 2004, Matt spoke with patient advocate Maria Levonchuck. Levonchuck notes, attached to Response as Exhibit I. Levonchuck's notes reflect that she reported this incident to Emi Valdez, Keystone's risk manager. Exhibit F.

According to Keystone, Pressley attended a meeting on October 13, 2004, at noon, with Dr. Michael Salazar, Keystone's Clinical Director, and Kevin Williams, its Human Resources Director. Williams Deposition Excerpt, attached to Motion as Exhibit D. At this meeting, Pressley was told that he was terminated because of the October 10, 2004, incident. Id. at 35-36.

Matt saw Pressley arrive at Keystone on October 13. He went to Levonchuck and told her that he was concerned for his safety. Levonchuck Deposition Excerpt at 16-19. She told him to stay calm and avoid Pressley. Id. at 19. She then left a message for Dr. Salazar. Id.

According to Williams and Salazar, after they met with Pressley, they escorted him outside the building, and saw him walk in the direction of the parking lot. Williams Deposition Excerpt at 39-40; Salazar Deposition Excerpt, attached to Motion at Exhibit H at p. 23. However, they did not see him leave the Keystone grounds. Id.

A few minutes thereafter, Pressley returned to and entered the building. He went up to Matt, who was standing in line at the cafeteria, and assaulted him, punching him in the face and saying "I'm going to get you". Alfred O'Connor Deposition Excerpt, attached to Motion as Exhibit L, at 23. Mr. Williams testified that after Pressly had assaulted Mr. Matt, he said a

number of times "that he can't believe that he was losing his job and that he couldn't lose his job."  Williams Testimony at 70.

It emerged in discovery that Pressley had indicated on his employment application that he had been convicted of a crime.  Exhibit L to Response.  Keystone apparently failed to ascertain the circumstances of this conviction, although it did run a Pennsylvania criminal check on Pressley, which came up clear.  Record check, attached as Exhibit G to Keystone's Reply.

Moreover, Pressley's two professional references were Kathy Pressley, the Human Relations Director at Vison Quest, and Brenda Brown, Residential Supervisor at Child Guidance, who had the same telephone number as the emergency contact listed by Pressley as "Brenda Pressley."  Employment Application, attached as Exhibit D to Keystone's Reply Memorandum; and Reply Memorandum, unpaginated, at n. 7.  It is unclear whether there was any family relationship between Clarence Pressley and his references.  Apparently, Pressley was discharged from Vision Quest after a physical altercation with a patient, although the Bureau of Unemployment permitted him to obtain benefits on the basis that his actions were in self-defense.  Keystone's Reply Memorandum at n. 6; and Exhibit F.

It further emerged that Pressley had been transferred at Keystone away from the juvenile residential treatment program after a female patient complained that he had behaved toward her in a sexually inappropriately way.  Williams Deposition Excerpt at 19-23; Salazar Deposition Excerpt at 11-14.

4

III.     Legal Standards for Summary Judgment

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pr. 56.  The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp.. v. Catrett, 477 U.S. 317, 323 (1986).  In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, supra at 325; Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party.  Anderson v. Liberty Lobby, supra at 255;  Tiggs Corp. v. Dow Corning Corp., 822 F.2d 358 , 361 (3d Cir. 1987). Nevertheless, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, supra, at 323.

IV.     Discussion

A.     Respondeat Superior

I will grant Keystone's motion to the extent that it seeks the dismissal of every claim based upon the doctrine of *respondeat superior*.  This doctrine refers to the responsibility of an employer for the acts of its agent, if undertaken in the course of his employment.  R.A. v. First Church of Christ, 748 A.3d 692, 699 (Pa. Super. 2000); Fitzgerald v. McCutcheon, 410 A.2d

5

1270, 1271 (1979); Restatement (Second) of Agency § 228.  The conduct of an employee is considered "within the scope of employment" for this purpose, if:

> (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

R.A. v. First Church of Christ, supra.  An assault committed by an employee upon another for personal reasons is not within the scope of employment.  Id.

In this case, it is abundantly clear that Pressley's action in assaulting Matt was not undertaken within the course of his employment.  As Keystone points out, Pressley was not even its agent at the time of the assault; he had just been terminated.

Even if this was not enough to preclude *respondeat superior* liability, the facts unambiguously indicate that this was an assault committed for Pressley's own, personal reasons. Construing the evidence in the light most favorable to Matt, as I must do in deciding a motion for summary judgment, I will assume that Williams' testimony that Pressley spoke about losing his job after assaulting Matt would not be believed.  Nevertheless, the circumstances surrounding the incident point inescapably to a conclusion that Pressley attacked Matt because Matt caused his termination by Keystone.  There is no evidence indicating that Pressley was actuated, even in part, by a purpose to serve Keystone.[1]

Accordingly, I will dismiss those portions of Matt's complaint which attribute liability to Keystone on the basis of *respondeat superior*.  Since Keystone could not otherwise be liable for

---

[1]As a point of comparison, if Pressley had assaulted Matt on October 10, 2004, Matt could have argued that he did it in a misguided attempt to perform his duties by enforcing Keystone rules or establishing his own authority as a counselor.  No such argument is possible here.

assault, battery, or the intentional infliction of emotional distress, these counts must be dismissed as they pertain to Keystone.  However, as discussed below, I will deny Keystone's motion in all other respects.

B.      Negligent Hire and Supervision, and Inadequate Security

      I will not dismiss those portions of Matt's complaint which allege that Keystone is liable for negligence in its hiring and/or supervision of Pressley, or in its security practices, nor will I dismiss the associated claim for negligent infliction of emotional distress.  In its response, Keystone makes a number of arguments that it was not negligent.  However, Matt has easily shown more than the "mere scintilla" which would require dismissal of his claims.  Therefore, he is entitled to have these claims heard by a jury.

      Moreover, I agree with Matt that the Pennsylvania Mental Health Procedures Act ("MHPA"), 50 P.S. § § 7101 *et seq*., is irrelevant here.  That statute provides civil and criminal immunity for decisions regarding the treatment of mental health patients, absent wilful misconduct or gross negligence.  Allen v. Montgomery Hospital, 696 A.2d 1175, 1178 (Pa. 1997).  In Allen, for example, the guardians of a mental patient who died while hospitalized challenged a physician's medical decision to remove the patient from all but one of her psychotropic medications.  By contrast, the actions by Keystone of which Matt complains were not decisions regarding his treatment.

V.      Conclusion

In accordance with the above decision, I will now enter the following:

O R D E R

AND NOW, this    3rd        day of May, 2006, upon consideration of Defendant,

Keystone Center for Extended Care's Motion for Summary Judgment, filed in this case as

Document 11, Plaintiff's response thereto, and the subsequent briefing, it is hereby ORDERED

that:

1.  Keystone's Motion is GRANTED in so far as Matt's counts for assault, battery and the

intentional infliction of emotional distress are DISMISSED as they pertain to Keystone;

2.  The Motion is otherwise DENIED.


BY THE COURT:


/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

8